JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Denying Petitioner's Petition for Preliminary Injunction

Pending before the Court is James F. Small's Petition for Preliminary Injunction Under Section 10(j) of the National Labor Relations Act ("NLRA"). The Court heard oral argument on this matter on July 27, 2009. After considering all argument presented at the hearing and in the papers submitted by the parties, the Court DENIES the Petition for Preliminary Injunction.

I. Background

Swift Transportation Co., Inc. ("Respondent") is a major truckload motor carrier with facilities through the United States and Mexico. In 2007, Respondent signed onto the Ports of Long Beach and Los Angeles' "Clean Trucks Program" and, in an apparent attempt to properly implement that program, hired a new staff of drivers during the late summer and early fall of 2008.

Shortly after they were hired, the drivers became dissatisfied with their working conditions. Their primary complaints concerned their belief that they were being forced to work overtime without additional pay and that Respondent was not complying with certain Department of Transportation ("DOT") regulations, thereby putting their safety at risk. Beginning in the fall of 2008 and the winter of 2009, the drivers began gathering in groups to discuss these complaints. During this time, the following drivers emerged as leaders of the others: Anthony Herron ("Herron"), Marco Diaz ("Diaz"), Salvador Gonzales ("Gonzales"), and Bismark Sanchez ("Sanchez"). Herron, Diaz, Gonzales, and Sanchez then began bringing these

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

complaints to the attention of their supervisors, Brennan Obray ("Obray"), the terminal manager of the Wilmington, California facility where these drivers were stationed, and Jerry Moyes ("Moyes"), Respondent's Chief Executive Officer ("CEO").

Toward the end of 2008, the drivers turned to International Brotherhood of Teamsters (the "Union") for support. Around this time, the Union began to have greater visibility at the Wilmington facility. In large part, this was due to the efforts of Herron, Diaz, Gonzales, and Sanchez, all of whom openly discussed the Union at work, encouraged other drivers to support the Union, and collected employee names and contact information for the Union.

Beginning in early to mid January of 2009, various representatives of Respondent allegedly began engaging in a bevy of unfair labor practices targeted against employees. Broadly speaking, these unfair labor practices included threatening to terminate Union supporters and employee leaders, indicating to the drivers that Union support would be futile, threatening to shut down the Wilmington facility if the drivers continued to engage in Union organizing activities, interrogating drivers about their Union organizing activities, and unlawfully discharging employees.[1] Supposedly, these unfair labor practices have taken a severe toll on employees by chilling their Union organizing activity.

On February 27, 2009, the Union filed an unfair labor practice charge against Respondent in Case No. 21-CA-38735, asserting violations of 29 U.S.C. § 158(a)(1) ("Section 8(a)(1)") and 29 U.S.C. § 158(a)(3) ("Section 8(a)(3)"). It amended this charge on April 8, 2009, and then again on May 20, 2009. The second amended charge is based on allegations that Respondent violated Section 8(a)(1) by interrogating employees regarding their support for and participation in both Union activities and protected concerted activities; threatening to shut down the company and to replace employees on account of the employees' support for and participation in Union activities and protected concerted activities; attempting to create the impression among employees that their Union activities were under surveillance by Respondent; and indicating that it would be futile for employees to select Union representations. The second amended charge is also based on allegations that Respondent violated Section 8(a)(3) by discharging Herron, Diaz, Gonzales, and Sanchez for their support of and activities on behalf of the Union, as well as their protected concerted activities. *Id.*

---

[1] These allegations are discussed more fully later in this Order.

JS-6
O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

     On May 28, 2009, James F. Small ("Petitioner"), Regional Director of Region 21 of the National Labor Relations Board (the "Board"), investigated the Union's charges.  Petitioner then issued a Complaint and Notice of Hearing, which was originally set for August 10, 2009, but was then advanced to August 4, 2009.  Then, on July 1, 2009, Petitioner filed against Respondent a Petition for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j) ("Section 10(j)").  In the Petition, Petitioner specifically requests that the Court issue an Order requiring Respondent, its officers, agents, successors assigns, and all persons acting in concert or participation with it to (1) cease and desist from (a) coercively interrogating employees regarding their union activities and support; (b) threatening employees with termination, replacement of employees, and facility closure if they continue in their protected concerted activities and activities in support of the Union; (c) giving employees the impression that their activities on behalf of the Union are under surveillance; (d) making statements to employees indicating that their support for the Union is futile; (e) discharging employees or in any other manner discriminating against its employees because of their union or other protected concerted activities or the union activities of other employees, and (f) discouraging employees from engaging in union activities; and (2) take affirmative action to (a) within five days, offer to Diaz, Herron, Sanchez, and Gonzales full interim reinstatement to their prior positions with Respondent, displacing, if necessary, any newly hired, reassigned and/or transferred workers, including any former part-time employees converted to full time positions; or if their positions no longer exist, to substantially equivalent positions; (b) expunge from Respondent's files, on an interim basis, any reference to the terminations of the employees listed above; (c) post copies of the Court's opinion and order, in Spanish and English, at Respondent's facility where employer notices to its employees are customarily posted; (d) maintain those postings for the duration of the Order and ensure that they are free of all obstructions and defacements; (e) grant reasonable access to the Regional Director's agents to Respondent's facility to monitor compliance with said posting requirements; and (f) within twenty days of the issuance of the Order, file with the Court, with a copy submitted to the Regional Director, a sworn affidavit from a responsible official of Respondent setting forth with specificity the manner in which the Employer has complied with the terms of the decree.

     Subsequent to the filing of the Petition, Respondent filed its opposition as well as objections to the evidence Petitioner relies on in support of the Petition.  Petitioner filed his reply and response to Respondent's evidentiary objections.

II.    <u>Legal Standard</u>

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

Section 10(j) provides that in response to a petition from the Regional Director for injunctive relief, the district court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j). Injunctive relief under Section 10(j) is intended to preserve the status quo pending final action by the Board. *Scott v. Stephen Dunn & Assocs.*, 241 F.3d 652, 660 (9th Cir. 2001). The status quo to be protected is that which existed prior to the employer's unlawful response to the employee's organizing campaign. *Id.*

In adjudicating a Section 10(j) request, courts in this circuit rely on traditional equitable principles to determine whether interim relief is appropriate. *Miller v. California Pac. Med. Ctr.*, 19 F.3d 449 (9th Cir. 1994) (en banc). Recently, the Ninth Circuit clarified the controlling standard for injunctive relief in light of the Supreme Court's decision in *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), vacated on unrelated grounds. A party seeking a preliminary injunction must demonstrate that she is likely to succeed on the merits, that irreparable harm is likely in the absence of preliminary relief, that the balance of equities tips in favor of such relief, and that an injunction is in the public interest. *Id.* This four-prong test is commonly referred to as the traditional test for injunctive relief. *See Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988).

III.    Discussion

Petitioner argues that he has a strong likelihood of success on the merits of both his Section 8(a)(1) and 8(a)(3) claims; it is likely that a failure to obtain an injunction will irreparably harm the employees, the Union, and the Board's remedial authority; the balance of the equities tips in favor of granting an injunction; and the public interest will be served by an injunction. In comparison, Respondent contends that each of the four prongs of the traditional test weigh in its favor and, therefore, injunctive relief is unwarranted in this case. However, before the Court resolves this dispute, it must address three preliminary issues. The first relates to the timing of this petition, the second relates to whether the Court should consider Respondent's evidentiary objections, and the third concerns the applicable standard of review.

    A.    The Timing of the Petition

In its opposition, Respondent contends that Petitioner's "inexcusable delay precludes Section 10(j) relief." Respondent points out that the Union initially requested Section 10(j) relief in its unfair labor practice charge it filed with Region 21 on February 27, 2009. However,

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

it was not until July 1, 2009, that Petitioner filed the instant petition. Thus, Respondent argues, the fact that four months have passed since Respondent first filed its initial unfair labor practice charge should be deemed sufficient reason to deny the requested relief.

This argument is unavailing. "In a 10(j) case the Board . . . may seek interim relief only after it has issued a complaint." *Danielson v. Local 275, Laborers Int'l Union*, 479 F.2d 1033, 1036 n.2 (2d Cir. 1973); *see also* 29 U.S.C. § 160(f) ("The Board shall have power, *upon issuance of a complaint* as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States . . . .") (emphasis added). In this case, the complaint was issued on May 28, 2009. Petitioner then filed the petition a little more than a month later. In light of the factual complexity of this case, it appears reasonable that it took Petitioner a little more than a month to bring this Petition before the Court. Indeed, there is nothing in the record that indicates otherwise. Accordingly, the Court finds that Petitioner timely filed the instant Petition.

    B.    <u>Respondent's Evidentiary Objections</u>

Next the Court considers Respondent's evidentiary objections. In conjunction with its opposition, Respondent submitted fifty-six pages of objections to the evidence provided by Petitioner in support of the Petition. The objections are to statements set forth in the affidavits of Sanchez, Herron, Diaz, Gonzales, Diego Lopez ("Lopez"), Ligia Navarro ("Navarro"), Melvin English ("English"), and Apolonio Guzman ("Guzman"). These objections are all made under Federal Rules of Evidence 402, 602, 701, 702, 704, and 802.

It is Petitioner's position, however, that the evidence he submitted, though possibly flawed, can nevertheless be considered by the Court on a motion for preliminary injunction. The Court agrees. It is well-established that trial courts may consider otherwise inadmissible evidence in preliminary injunction proceedings. *See, e.g., Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); *see also Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1530 n.10 (9th Cir. 1992). Indeed, district courts have considerable discretion to consider otherwise inadmissible evidence when ruling on the merits of an application for a preliminary injunction. *See Flynt*, 734 F.2d at 1394; *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (observing that the rules of evidence do not strictly apply to preliminary injunction proceedings). This is not to say, however, that issues pertaining to knowledge and hearsay have no relevance at this stage of the proceedings. But this is to say that those issues properly go to weight, rather than admissibility.

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

    C.    <u>The Applicable Standard of Review</u>

    Lastly, the Court turns to a hotly disputed issue amongst the parties: what standard of review should the Court apply when, generally speaking, analyzing the applicable four-part test, and, more specifically speaking, assessing whether Petitioner has satisfied the first prong of said test? Citing to *Miller*, 19 F.3d 449, Petitioner contends that to satisfy the first prong of the test, he only needs to produce "some evidence to support the unfair labor practice charge, together with an arguable legal theory." *See id.* at 460. Thus, he argues, his burden is relatively insubstantial. He also argues, moreover, that any factual disputes should be resolved in his favor. *See Scott*, 241 F.3d at 662. It is Respondent's position, however, that the Court should hold Petitioner to a much more stringent standard. Specifically, Respondent argues that under *Winter*, 129 S. Ct. at 375-76, and *American Trucking*, 559 F.3d at 1052, Petitioner must make a "clear showing" that he is entitled to a preliminary injunction.

    The Court agrees with Respondent. In *Winter*, the Supreme Court reversed a Ninth Circuit decision, which upheld a grant of a preliminary injunction by use of a standard that the Supreme Court found was too lenient. *See Winter*, 129 S. Ct. at 375-76. Primarily at issue in *Winter* was whether an injunction could issue merely because it was possible that there would be an irreparable injury to the plaintiff. *Id.* at 375. The Supreme Court answered this question in the negative, stating that an injunction may issue only if it is likely that there will be an irreparable injury to the plaintiff. *Id.* In reaching this decision, the Supreme Court emphasized that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Id.* at 375-76 (citation omitted) (emphasis added).

    Now it is Petitioner's contention that *Winter* should be confined to the second prong of the traditional four-part test. Accordingly, Petitioner argues, *Miller* and its progeny survive *Winter*, which, therefore, means that he need only produce some evidence together with an arguable legal theory to satisfy the first prong of the test. But *American Trucking* suggests otherwise. In reviewing *Winter*, the Ninth Circuit in *American Trucking* recited the applicable four-part test as follows:

> A plaintiff seeking a preliminary injunction *must establish that he is likely to succeed on the merits*, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

injunction is in the public interest.

*American Trucking*, 559 F.3d at 1052 (citing *Winter*, 129 S. Ct. at 374) (emphasis added). Importantly, the Ninth Circuit went on to state, "To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *American Trucking*, 559 F.3d at 1052 (footnote omitted). Thus, pre-*Winter* and pre-*American Trucking*, Petitioner may have been able to produce only some evidence together with an arguable legal theory to satisfy the first part of the applicable test, and, moreover, all factual conflicts may have been resolved in his favor. However, post-*Winter* and post-*American Trucking*, Petitioner carries a different burden. Now, he must establish that he is likely to succeed on the merits of his claims. Such is necessary in order to clearly show that he is entitled to preliminary injunctive relief. *See American Trucking*, 559 F.3d at 1052 (citing *Winter*, 129 S. Ct. at 375-76). Accordingly, a failure to establish that he is likely to succeed on the merits of his claim is fatal to Petitioner's petition.

    D.    <u>The Traditional Four-Part Test for Injunctive Relief</u>

Having addressed these three preliminary matters, the Court now considers whether Petitioner has satisfied the traditional four-part test for injunctive relief.

        1.    <u>Likelihood of Success on the Merits</u>

The first part of this test requires Petitioner to establish a likelihood of success on the merits of his Section 8(a)(1) and Section 8(a)(3) claims.

           a.    <u>Section 8(a)(1)</u>

In relevant part, Section 8(a)(1) prohibits employers from interfering with, restraining, or coercing employees in the exercise of their rights guaranteed in 29 U.S.C. § 157 ("Section 7"). *See* 29 U.S.C. § 158(a)(1). Section 7 rights include the right to self-organization, the right to form, join, or assist labor organizations, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. *See id.* at § 157. An employer can violate Section 8(a)(1) in various ways. For instance, Section 8(a)(1)'s prohibition of restraint and coercion of employees encompasses threats of reprisal. *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 618, 89 S. Ct. 1918, 23 L. Ed. 2d 547 (1969). Accordingly, threats to adversely affect an employee's employment status or working conditions because of the employee's concerted activities violates the NLRA. *Southwire Co. v. NLRB*, 820 F.2d 453, 457

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

(D.C. Cir. 1987). Furthermore, if an employer, in the context of an active union campaign, makes statements about adverse economic consequences that might result from unionization, such as plant closure, those statements may also violate the NLRA. *Gissel Packing*, 395 U.S. at 618-19 (noting that an employer is free to tell "what he reasonably believes will be the likely economic consequences of unionization that are outside his control," but is prohibited from making "threats of economic reprisal to be taken solely on his own volition"). In the same vein, an employer violates the NLRA by telling employees that attempts to secure union representation will be futile. *Well-stream Corp.,* 313 NLRB 698, 706 (1994). In assessing whether the foregoing types of statements violate the NLRA, courts are to consider the totality of the circumstances. *See Avecor, Inc. v. NLRB*, 931 F.2d 924, 931 (D.C. Cir. 1991). If the statements have a reasonable tendency to coerce or to interfere with those rights, they are properly considered violations of Section 8(a)(1).

An employer can also violate Section 8(a)(1) by improperly interrogating employees about their union activities. *See Southwire Co.*, 282 N.L.R.B. 916, 917 (1987). The test for evaluating interrogations is "whether under all the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the Act." *Id.* (citation omitted).

Additionally, the Board has found that an employer violated the NLRA by maintaining "surveillance of the meetings and meeting places of [the union] and of the activities of . . . employees in connection with [the union]." *Pennsylvania Greyhound Lines, Inc.*, 1 N.L.R.B. 1, 48 (1935).

According to Petitioner, on numerous occasions in January and February of 2009, Respondent violated Section 8(a)(1) by making threats of reprisal, indicating that securing union support would be futile, improperly interrogating employees, and indicating that the employees were under surveillance. However, as explained below, because Respondent has proffered credible evidence that directly controverts Petitioner's evidence, this Court must conclude that Petitioner has failed to establish a likelihood that Respondent has violated Section 8(a)(1).

      i.  Early January 2009 Threat to Terminate Herron

The first instance Petitioner draws the Court's attention to concerns a threat Respondent made to Herron. According to Herron, in early January of 2009, Obray, the terminal manager, expected employees to work 10 hour shifts. *Petition in Support* ("*Pet.*") Ex. 3 at p. 37 (*Herron Aff.*). Initially, Herron worked these 10 hour shifts. However, when Respondent refused to pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

him overtime, he began to regularly refuse to work past eight hours. *Id.* One day, as Herron was preparing to leave work, Obray asked Herron to come speak with him. *Id.* at p. 42. Obray allegedly asked Herron why he was leaving early, and told Herron that he was breaking morale because the other drivers were being influenced by his leaving at the end of an 8 hour shift. *Id.* Herron responded that the drivers should leave at the end of the 8 hour shift because Respondent was not paying them for overtime. *Id.* at p. 43. Obray replied that Herron might not need to return to work. *Id.* Herron then asked Obray if he was being terminated, to which Obray responded in the negative, but indicated that Herron needed to comply with Respondent's request that employees work 10 hour shifts. *Id.*

Pointing to this conversation, Petitioner contends that Respondent violated Section 8(a)(1) because Obray's comments referenced Herron's protected activities and his influence on other employees. However, the Court disagrees. In its opposition, Respondent points out that it is no longer in dispute that Herron and the other employees were exempt from Federal Fair Labor Standards Act overtime requirements because they were subject to the DOT's hours of service regulations. *See* 29 C.F.R. § 782.1. Thus, as Herron was exempt from overtime requirements, he lacked justification for leaving the terminal before he completed the dispatch of his loads. In other words, by leaving his shift early, Herron was not engaged in a protected activity. Accordingly, Obray's insinuation that Herron might be discharged if he continued to fail to comply with what appear to be proper and lawful directives does not constitute a violation of Section 8(a)(1).

        ii. <u>Mid-January Statements of Futility and Threats to Shut Down the Facility</u>

The second instance Petitioner draws the Court's attention to occurred in mid-January of 2009. That month, Obray told Herron that attempts to secure union representation would be futile. *See Pet.* Ex. 3 at p. 44. More specifically, Obray told Herron that the Union was not going to work at the facility, that Respondent's CEO, Moyes, would never allow it, and that Moyes would shut down the facility before allowing a Union. *Id.* Respondent, however, has proffered evidence that tells a very different story. According to Respondent, at no time during this mid-January meeting did Obray reference either organizing efforts or facility closure. *See Resp.* Ex. 7 at ¶ 7 (*Obray Decl.*).

At the end of the day, what the Court has before it is a classic case of "he said, she said." Importantly, there is nothing in the record that calls into question either party's version of events

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

or the evidence they submitted in support of their respective positions. Consequently, the Court finds that Plaintiff has failed to establish a likelihood of prevailing on this Section 8(a)(1) claim.

### iii. Late January 2009 Interrogation of Assembled Employees

The third instance the Court examines occurred in early-to-mid January of 2009. During this time, Obray conducted a general employee meeting for morning shift drivers. *See Pet.* Ex. 3 at p. 29 (*Sanchez Decl.*). At that meeting, Obray suggested that rather than have drivers individually submit complaints to him regarding working conditions, the drivers should appoint two to three drivers to whom they could make complaints and who would then communicate these complaints to Obray. *Id.* Toward that end, Sanchez, Diaz, and Herron held a meeting in a terminal parking lot to discuss the appointment of those two to three drivers. *Id.* According to Sanchez, approximately five minutes into the meeting, a red-faced Obray came running into the parking lot, jumped over a brick barricade that surrounded the area where the drivers were standing, and stated something to the effect of "I hope this isn't a Union meeting and if it is a Union meeting, it isn't going to work here." *Id.* Herron then told Obray that they were conducting the meeting he had suggested that they hold. *Id.* at pp. 30-31. In response, Obray requested that they move the meeting outside of his office. *Id.* at p. 31. The drivers declined to accept that offer. *Id.*; *see also id.* at Ex. 4 at p. 53 (*Diaz Decl.*) (recounting a similar version of events).

Respondent disputes this account of that event. According to Respondent, Obray walked, not ran, over to the gathering because he wanted to "see if there was a problem." *Resp.* Ex. 4 at p. 44 at ¶ 9 (*Obray Decl.*); *see also id.* Ex. 7 at p. 73 at ¶¶ 1 & 5 (*Montalbo Decl.*) (noting that Obray walked to the meeting and appeared calm). Such cause for concern was warranted, Respondent argues, because Obray assumed that the drivers were still "clocked in to work," which is why he wanted to investigate what was occurring during company time. *Id.* at Ex. 4 at p. 44 at ¶ 9 (*Obray Decl.*). Respondent further contends that at no time during Obray's interaction with the drivers did Obray mention the Union or organizing activities. *See id.* ("As I approached the group, I asked 'What's going on?' I did not make any mention of the Union or organizing activities.").

On review, the Court finds that Petitioner has not established a likelihood of success on his claim. In determining whether an interrogation is unlawful, courts ask "whether under all the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the Act." *Southwire Co.*, 282 N.L.R.B. at 917. If the Court adopts Petitioner's

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

version of events, then certainly the Board would likely find that Obray's actions violated Section 8(a)(1), for by questioning employees about union activities and telling them that a union "wouldn't work [at the facility]," Obray's statements would reasonably tend to restrain, coerce, or interfere with the employees' Section 7 rights. However, if the Court adopts Respondent's version of events, then all it has before it is a story about a concerned supervisor questioning employees during work about a gathering on work property during work hours. Those types of questions do not tend to restrain, coerce, or interfere with Section 7 rights. Ultimately, the Court finds that Petitioner has not established a likelihood of success on this claim.

                iv.    <u>Late January/Early February 2009 Statements Made to Lopez</u>

The fourth incident that Petitioner believes constitutes a violation of Section 8(a)(1) occurred in either late January or early February of 2009. According to one of Respondent's drivers, Lopez was at work when Obray called him over. *See Pet.* Ex. 3 at p. 96 (*Lopez Aff.*). Obray told Lopez that he had heard about the drivers' organizing activities, and informed Lopez that Moyes would rather move the company to Arizona than have to deal with a union. *Id.* Obray praised Lopez as a "good worker," and told him that he did not want to see him get terminated. *Id.* He then told Lopez that there were "bad apples" in the company, and that the company needed to get rid of them. *Id.*

Pointing to this conversation, Petitioner argues that Obray unlawfully created the impression that employees were under surveillance. *See Bridgestone Firestone S.C.*, 350 N.L.R.B. 526, 527 (2007). "In determining whether an employer's statement has created an unlawful impression of surveillance, the test is 'whether the employees would reasonably assume from the statement that their union activities had been placed under surveillance.'" *Bridgestone Firestone*, 350 N.L.R.B. at 527 (citation omitted).

Obray's comments that he had heard of union activities do not support a finding that employees would reasonably assume that their activities had been placed under surveillance. It is just as likely that Obray had heard of these activities through normal, non-coercive conversations with employees as it is that he had heard about them because he was improperly monitoring their activities. Accordingly, absent more evidence that Respondent was taking active steps to uncover information about the union activities, the Court rejects Petitioner's argument that these statements spurred the reasonable belief that the employees' union activities were under surveillance. *See Flexsteel Indus.*, 311 N.L.R.B. 257, 259 (1993) ("An employer

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

does not create an impression of surveillance by merely stating that it is aware of a rumor pertaining to the union activities of its employees, so long as there is no evidence -- and here there is none -- indicating that the Employer could only have learned of the rumor through surveillance.").

Petitioner also contends that certain statements made during this incident were unlawful because they insinuated that support for the Union would be futile, and because Obray suggested that Respondent would retaliate against Lopez if he engaged in Union activities. However, the Court also finds that Petitioner has not established a likelihood that Obray's statements violated Section 8(a)(1) because they indicated that Union support would be futile and because they constituted unlawful threats of reprisal. Again, there is a serious conflict of evidence on this issue. Specifically, Respondent has provided evidence which shows that at no time during his conversation with Lopez did he make any threat or otherwise mention the Union or Moyes' plan to move the business to Arizona if the Union came to the facility. *See Resp.* Ex. 4 at p. 49 at ¶ 20 (*Obray Decl.*). He also testifies that he used the phrase "bad apples" in the context of frustration over the fact that some drivers were purposely sabotaging certain loads. *Id.* As already noted several times throughout this Order, the evidence precludes a ruling favorable to Petitioner.

        v.        February Interrogations of Diaz

The fifth and sixth instances that Petitioner draws the Court's attention to occurred in February of 2009. Both involve the questioning of Diaz by Mark Donahue ("Donahue"), Respondent's corporate security investigator. According to Petitioner, on February 6, Diaz met with Donahue. *See Pet.* Ex. 3 at p. 55 (*Diaz Aff.*). During this meeting, Donahue asked Diaz why a number of drivers talked to him about their problems. *Id.* at p. 56. Diaz responded that it was because he had been appointed to be their representative. *Id.* Donahue then asked him for the names of the drivers he represented. *Id.* After Diaz gave Donahue these names, Donahue asked him if these guys were affiliated with the Union. *Id.* Additionally, during this meeting, Donahue questioned Diaz about an incident involving Sanchez. Apparently, the day before this meeting, Obray was alerted to a flat on his personal vehicle. *Id.* at p. 55. Donahue then told Diaz that they had evidence of Sanchez slashing Obray's tire, and told Diaz that if he confirmed that Sanchez was indeed the culprit, Donahue could ensure that Sanchez was only terminated, rather than arrested. *Id.* at pp. 56-57. Sanchez declined to do so. *Id.*

Donahue and Diaz met again on February 11, 2009. *Id.* at p. 58. According to Diaz, during that meeting, Donahue asked him who wanted to start a union. *Id.* Diaz responded that

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

no one wanted to. *Id.* Later during this meeting, Donahue again asked Diaz to identify those drivers who wanted to start a union. *Id.*

Pointing to these meetings, Petitioner argues that Donahue's actions constitute an unlawful interrogation in violation of Section 8(a)(1). *See Dealers Mfg. Co.*, 320 N.L.R.B. at 948 (finding that the questioning by a high-level company official in the office of the plant manager, and which occurred without legitimate purpose and assurances against reprisals, was inherently coercive in nature). Respondent, however, disagrees. It contends that Donahue's February 6th investigation concerned violence that was occurring at the terminal. According to Respondent, that day, Donahue questioned Diaz because he had received reports that Diaz and Lopez had threatened another driver, Hugo Molina ("Molina"), for being antiunion, and he also wanted to investigate the alleged slashing of Obray's tire. *Resp.* Ex. 3 at p. 33 at ¶¶ 10-11 (*Donahue Decl.*). Donahue further testifies that at no time during the interview did he make any attempt to ascertain whether Diaz was a Union supporter, nor did he request or otherwise attempt to learn the identities of other Union supporters. *Id.* at ¶ 11. And with regard to the February 11th meeting, Donahue testifies that he called that meeting because he believed Diaz would be a good source of information based on Diaz's proclamation at the February 6th meeting that drivers often came to him for information. *Id.* at ¶ 16. Donahue also testifies that he never asked for any type of information relating to the Union campaign, and, in fact, told Diaz that he had no interest in what he or other Union organizers discussed. *Id.*

Again, the issue at hand turns on two differing accounts of the same story. And, as noted above, in light of the fact that both accounts are credible, the Court must conclude that Petitioner has failed to establish that he is likely to succeed on his Section 8(a)(1) claims insofar as they relate to these February interrogations.

### vi.    February "Captive" Meetings

The seventh and eighth instances that Petitioner draws the Court's attention to also occurred in February of 2009. According to Respondent, Moyes made statements during two "captive" meetings in February 2009 which constituted violations of Section 8(a)(1). The first meeting occurred on February 12, 2009. That day, Moyes called a driver meeting for day shift and night shift drivers. *Pet.* Ex. 3 at p. 71 (*Gonzales Aff.*). Gonzales testifies that during this meeting Moyes mentioned that he had heard rumors about union organizing, and stated that he would close the terminal before he would allow drivers to organize themselves into a union. *Id.*

**JS-6**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

Supposedly, Moyes also stated that he had thirty six individuals who wanted the drivers' jobs. *Id.*

Respondent called another meeting on February 16, 2009. At this meeting, which was attended by, among others, Gonzales and six other drivers, Moyes, via conference call, told the drivers that he had heard a rumor about a walkout, and recommended that the drivers not follow through with that plan. *Id.* Furthermore, during this conversation, Moyes told the attendees that he would close down the terminal and run it from a different state if he had to. *Id.* at p. 72.

Again, Respondent disputes this version of the relevant events. According to Respondent, the main point of Moyes' in-person visit during the first captive meeting was to speak with drivers about certain incidents of violence that had been occurring at the terminal in the two weeks prior, including the tire slashing and threats made by drivers to other drivers. *See Resp.* Ex. 4 at p. 47 at ¶ 17 (*Obray Decl.*). According to Obray, Moyes went on to inform all that were present that if additional violence occurred in the future, he would simply close the terminal. *Id.* Thus, Respondent argues, Moyes threatened to close down the plant, not because he wanted to prevent the employees from unionizing, but because he wanted to prevent any further occurrences of violence.

Now it is undisputed that statements concerning the closure of a terminal if employees continued with unionizing activities are properly considered coercive statements in violation of Section 8(a)(1). And if there was sufficient evidence that those types of statements occurred then this Court would have no trouble concluding that Moyes' comments during these captive meetings likely violated Section 8(a)(1). However, there is not sufficient evidence to that effect and, consequently, the Court must conclude that Petitioner has failed to carry his burden in showing that he is likely to prevail on his claim that Respondent violated Section 8(a)(1) by making unlawful threats.

The Court also finds that Petitioner has failed to establish that he is likely to prevail on his claim that Respondent violated Section 8(a)(1) by unlawfully surveilling the employees. As noted above, to show that Respondent created an unlawful impression of surveillance, Petitioner needs to show something more than the mere fact that Respondent had heard of unionizing activities. Petitioner has not done so. Accordingly, the Court finds that Petitioner is unlikely to prevail on his claim that Respondent created an unlawful impression of surveillance.

      vii. February 2009 Interrogation of Employee Lopez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

The ninth and final incident cited by Petitioner is an incident that occurred in February of 2009. Sometime during that month, Lopez met with Donahue. *Pet.* Ex. 3 at p. 98 (*Lopez Aff.*). During this meeting, Donahue first began questioning Lopez about some alleged threats Diaz had made to Molina. *Id.* Donahue then proceeded to ask Lopez if Diaz was a leader who organized the other drivers. *Id.* at p. 99.

Respondent confirms that at this meeting Donahue questioned Lopez about the allegations of threats directed at Molina. *See Resp.* Ex. 3 at p. 36 at ¶ 17 (*Donahue Decl.*). However, according to Respondent, at no time during the interview did Donahue attempt to determine if Diaz was involved in an organizing campaign at the facility or otherwise indicate to Lopez that he wanted information on the Union and or/its supporters. *Id.*

On review, the Court finds that Lopez's testimony and Donahue's testimony both tell credible stories that directly controvert one another. Consequently, the Court also finds that Petitioner has not shown that he is likely to succeed on his claim that this interrogation violated Section 8(a)(1).

viii. Conclusion

In summary, the Court finds that Plaintiff has not established that he is likely to succeed on his claims that any of the foregoing nine incidents violated Section 8(a)(1).

b. Section 8(a)(3)

Under *Wright Line*, 251 N.L.R.B. 1083 (1980), to prove a violation of Section 8(a)(3), Petitioner must establish by a preponderance of the evidence that antiunion sentiment was a substantial or motivating factor in the challenged employer decision. *Bridgestone Firestone*, 350 N.L.R.B. at 529. To show discriminatory motivation, Petitioner must establish the following: (1) the employee was engaged in union activity, (2) employer knowledge of that activity, and (3) antiunion animus by the employer. *See Sears, Roebuck & Co.,* 337 N.L.R.B. 443, 443 (2002). In the absence of direct evidence, animus is not lightly to be inferred. *NLRB v. Gulf States United Telephone Company*, 694 F.2d 92, 95 (5th Cir. 1982). However, a "respondent's inability to adhere with consistency to any explanation for its action in terminating an employee warrants an unfavorable inference against that respondent." *Laidlaw Transit,* 315 N.L.R.B. 509, 512 (1994). Once Petitioner establishes a prima facie case, the burden of persuasion "shift[s] to

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct." *Wright Line*, 251 N.L.R.B. at 1089. That is, Respondent must demonstrate by a preponderance of the evidence that it would have taken the same action in the absence of knowledge that the employee was engaging in protected activity. *Hicks Oil & Hicksgas, Inc.*, 293 N.L.R.B. 84, 85 (1989).

According to Petitioner, he is likely to succeed on his Section 8(a)(3) claims with respect to the allegedly unlawful discharges of Herron, Sanchez, Diaz, and Gonzales. The Court evaluates this contention in relation to each individual, beginning first with Herron.

I.  Herron

As an initial matter, the Court notes that two points can readily been resolved in Petitioner's favor. First, the affidavits produced by Petitioner all support a finding that Respondent was aware that Herron was engaged in concerted activities. For instance, according to the testimony of Navarro, Herron's former supervisor, a couple weeks prior to Sanchez's termination, Obray walked out of the office, confirmed that Herron was involved in concerted activity, and proclaimed that the company needed to get rid of "bad apples" like Herron. *Pet.* Ex. 3 at p. 81 (*Navarro Aff.*). And, second, Respondent discharged Herron on February 5, 2009.

However, the question here is not simply whether Respondent discharged an employee whom it knew was engaged in concerted activities but whether Petitioner has sufficiently shown that Respondent's action was motivated by antiunion bias. Certainly the timing of the discharge was suspicious, for it came around the same time that the Union appeared to be gaining significant support amongst the drivers. *See Golden Day Schools, Inc. v. NLRB*, 644 F.2d 834, 838 (9th Cir. 1981) (finding the timing of discharge relevant in a Section 8(a)(3) analysis). Additionally, as noted above, Petitioner has proffered evidence that Respondent repeatedly evidenced strong antiunion bias by announcing to its assembled workers that it would not allow a union at the facility. If the Court had only these facts before it, then it would conclude that the foregoing circumstances support an inference that the discharge was motivated by antiunion sentiment. However, there is a different story being told by Respondent, one that is as credible as the story being told by Petitioner. According to Respondent, it terminated Herron, not because of his Union-related activities, but because he repeatedly refused to perform assigned work. Specifically, Herron failed to complete DOT-mandated pre-trip inspection, and disregarded DOT rules regarding the placement of hazardous materials placards on his load. *Resp.* Ex. 4 at ¶¶ 5 & 15 (*Obray Decl.*); *see also id.* at Ex. 5 at ¶¶ 5-7 (*Tejiera Decl.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

Respondent also has produced evidence that Herron repeatedly refused to work more than eights hours a day or otherwise respond to his supervisors' orders to haul a container back to the rail yard. Rank insubordination and a failure to comply with federal safety laws undoubtedly is a lawful reason to discharge an employee. *See Valley Hospital Medical Center, Inc.*, 351 NLRB No. 88, slip op. at 7 (2007); *GATX Logistics, Inc.*, 330 NLRB 481, 489-90 (2000). Thus, if Respondent is to be believed, then it appears that Respondent terminated Herron for a legitimate, non-discriminatory reason. Consequently, the Court finds that Petitioner has not established that he is likely to succeed on his claim that the termination of Herron's employment violated Section 8(a)(3).

      ii.  <u>Sanchez</u>

The Court next considers whether Petitioner is likely to succeed on his Section 8(a)(3) claim with respect to Sanchez. Again, two issues can readily be resolved. First, Petitioner has produced sufficient evidence establishing that Respondent was aware that Sanchez was involved in concerted activity. *See, e.g., Pet.* Ex. 3 at p. 81 (*Navarro Aff.*). Second, Sanchez was in fact discharged.

Applying the reasoning above, however, the Court finds that Petitioner has not established a likelihood that Sanchez's termination violated Section 8(a)(3). The record contains evidence that Respondent terminated Sanchez, not because of his protected concerted activities, but because he refused to cooperate with internal investigations regarding vandalism that had occurred at the Wilmington facility and his failure to complete his assigned work. *See Resp.* Ex. 3 at pp. 34-35 at ¶ 13 (*Donahue Decl.*) (indicating that Sanchez was hostile during investigations); *id.* at Ex. 4 at p. 45 at ¶ 11 (*Obray Decl.*) (noting that Sanchez refused to follow directions on February 5, 2009). Indeed, according to Obray, he terminated Sanchez on February 6, 2009 because, despite giving Sanchez numerous verbal warnings, Sanchez refused to follow company guidelines and was often disrespectful and insubordinate. *Id.* at Ex. 4 at p. 47 at ¶ 16.

What the record suggests, then, is that it is just as likely that Respondent discharged Sanchez for discriminatory reasons as it did for nondiscriminatory reasons. However, as the burden is on Petitioner to make the requisite showing, this conflict in evidence is fatal to Petitioner's position.

      iii.  <u>Diaz and Gonzales</u>

JS-6
O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

      Just as the Court has concluded that Petitioner is not likely to prevail on his Section 8(a)(3) claims with respect to Herron and Sanchez, the Court finds similarly with respect to Diaz and Gonzales. Both Diaz and Gonzales were discharged on February 24, 2009 on the ground that they failed to fully disclose prior criminal convictions on their employment applications in violation of company policy. *Pet.* Ex. 4 at pp. 107-09 (Respondent's position papers). As Respondent explains in its opposition, pursuant to company policy, which can be found in the company's driver manual provided to each driver upon his hiring, each Swift employee must agree to a background check that is to be performed at the company's discretion. *Resp.* Ex. 2 at pp. 23-24 at ¶ 6 (*Fitzsimmons Decl.*) Background checks for drivers are performed after the drivers complete their training period and are based on information provided by the employee on their employment application. *Id.* Further, applicants are instructed to disclose every prior conviction, no matter how remote in time. *Id.* According to Respondent, the company policy regarding background checks is "simple": a failure to cooperate will result in discipline, up to and including termination. *Id.*

      Even if the Court was to find that Diaz and Gonzales have sufficiently demonstrated a prima facie case under *Wright Line*, the Court would nevertheless find that Petitioner's Section 8(a)(3) claims fail with respect to Diaz and Gonzales because Respondent can adequately avail itself of the *Wright Line* defense. Beginning first with Gonzales, Respondent hired Gonzales on October 16, 2008. *Id.* at p. 27 at ¶ 18. On the first page of his application, Gonzales marked "no" in response to the question, "Have you ever been convicted of a criminal offense." *Id.* However, in fact, Gonzales had been convicted for (1) receiving/concealing stolen property, (2) carrying a loaded firearm in a public place, and (3) challenging to a fight in a public place. *Id.* at ¶ 20. When Donahue and Fitzsimmons interviewed Gonzales on February 24, 2009, he admitted to falsifying his application. *Id.* at p. 28 at ¶ 21. Immediately thereafter, Fitzsimmons terminated Gonzales. *Id.*

      Petitioner makes two arguments as to why this defense should fail, neither of which is persuasive. First, Petitioner argues that it is suspicious that Gonzales (and Diaz) were the only two employees targeted by a background check. But this argument appears to be factually incorrect. As evidenced by Fitzsimmons' declaration, he directed his staff to run additional background checks on all Wilmington drivers, not just Gonzales and Diaz. *See Resp.* Ex. 2 at p. 25 at ¶ 11 (*Fitzsimmons Decl.*) ("[I]n light of the violent incidents at the Wilmington terminal, I also directed my staff to run additional background checks on *all* Wilmington drivers.") (emphasis added). There is no evidence to the contrary.

JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

    Petitioner's second argument is equally unavailing. Put simply, Petitioner contends that the bulk of Gonzales' criminal history was contained in a Los Angeles County background check which, Petitioner presumes, was already in Respondent's possession. This argument is, however, misplaced because it confuses the issues. The issue is not whether Respondent knew of Gonzales' criminal history but whether Gonzales violated company policy by omitting his convictions from his record. Thus, even if Respondent had knowledge of Gonzales' criminal history, that fact is irrelevant for immediate purposes.

    Importantly, Respondent has produced uncontroverted evidence that over the past nine months, Respondent has terminated three additional Wilmington terminal employees for submitting false applications, as well as a total of twenty-five employees nationwide for similar offenses during the same period. *See Resp.* Ex. 2 at p. 28 at ¶ 22 (*Fitzsimmons Decl.*). Thus, even if Gonzales' omitted convictions were brought to Respondent's attention because of his unionizing activities, the evidence shows that, as a result of Respondent's apparent zero-tolerance policy for falsifying employment applications, Gonzales would have been terminated regardless of his affiliation with the Union.

    Respondent can also succeed on its defense with respect to Diaz. When Diaz was hired in October of 2008, he indicated, in response to the questions regarding his criminal history, that he had been arrested and convicted of reckless driving and solicitation of a prostitute in 1989. *Id.* at ¶ 15. However, a February 2009 review of Diaz's background showed that Diaz had omitted convictions for violations of a protective order and for contempt of court. *Id.* at ¶ 16.

    Now there is a factual dispute as to whether Diaz had ever revealed the existence of either of those convictions to Respondent. Diaz testifies that he brought those convictions to Donahue's attention at an October 2008 orientation meeting. *Pet.* Ex. 3 at pp. 61-62. However, Donahue disputes this account, *Resp.* Ex. 3 at p. 32 at ¶ 7 (*Donahue Decl.*). Importantly, not only is there corroborating testimony to support Donahue's position, *id.* at Ex. 2 at p. 26 at ¶ 16 (*Fitzsimmons Decl.*), but Diaz's application shows that the only convictions he revealed to Respondent were those relating to his arrests for reckless driving and solicitation. *See Pet.* Ex. 4 at p. 183. Thus, contrary to Petitioner's arguments otherwise, the bulk of the evidence shows that Diaz did not disclose these convictions to Respondent.

    Based on the foregoing, the Court finds that because Respondent is likely to prevail on its *Wright Line* defense with respect to Gonzales and Diaz, Petitioner has not adequately established

**JS-6**
**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4751 PSG (FMOx) | Date | September 18, 2009 |
|---|---|---|---|
| Title | James F. Small v. Swift Transportation Co., Inc. | | |

a likelihood of success on his Section 8(a)(3) claims relating to these two individuals' discharges.

### iv. Conclusion

For the foregoing reasons, the Court finds that Petitioner has not established that he is likely to succeed on his Section 8(a)(3) claims with respect to Herron, Sanchez, Gonzales, or Diaz.

### 2. The Remaining Three Prongs of the Traditional Four-Part Test

As the Supreme Court made clear in *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004), to obtain a preliminary injunction, a plaintiff must, at a minimum, show that she is likely to prevail on the merits of her claims. *Id.* at 665. As Petitioner has failed to do so, there is no need for the Court to address the remaining parts of the traditional four-part test.

IV. Conclusion

Based on the foregoing, the Court DENIES Petitioner's Petition for Preliminary Injunction.

**IT IS SO ORDERED.**